## Robinson *et al. v.* Green *et al.*

It seems that nothing short of gross negligence, or fraud, on the part of the elder judg-
ment creditor, will affect his lien, so as to let in junior judgments.

Where there has been proper diligence, the money made under a levy of different
judgments will be applied to their satisfaction according to their respective dates,
although there may be older judgments not levied.

IN ERROR from the circuit court of the county of Hinds.

This case comes up on exceptions to an order of the court ap-
propriating money to different judgments.

The contest was between the following judgments : Pittman *v.*
Hamilton *et al.,* judgment recovered 26th May, 1836; Scott & Ave-
ry *v.* Henry Green *et al.,* July 14, 1837; Samuel S. Heard *v.* Jas.
D. Goff *et al.,* May 29, 1838; Hotchkiss & Co. *v.* Goff *et al.,* No-
vember 9, 1836; Robinson, Kearny and wife (the plaintiffs in error)
*v.* Henry Green *et al.,* June 5, 1839. The property was sold un-
der levies of the executions in favor of Pittman, Scott & Avery,
and Robinson, Kearny and wife. The other claimants did not
make levies. Robinson *et als.* claimed that their execution should
be first satisfied, on the ground that they had showed the property,
and used superior diligence, and moved an exclusion of the others.

The court below decided, that Pittman, Scott & Avery, and
Heard had used equal diligence, were entitled to priority according
to the date of their judgments, and that then Robinson *et als.*
should come in; but that Hotchkiss should be postponed for want
of diligence. To this opinion exceptions were taken by Robin-
son *et als.*

It did not appear that there were any instructions given, by any
of the judgment creditors, not to levy, or that any stays were
given.

It appeared that the judgment creditors whose executions were levied, had sued out process, and used ordinary diligence. The execution in favor of Pittman had previously been levied upon lands, but before the sale the judgment was enjoined by the defendant in the execution.

Rucks, for plaintiff in error.

If we look only to the dates of the judgments, the court erred, for Hotchkiss was prior to Scott & Avery, to Heard, and to Kearny and wife.

An execution creditor may, by mere delay, lose his preference. Farrington *v.* Caswell, 15 John. 430; 8 Ib. 22–3.

Samuel S. Heard ought also to have been postponed, for he presented no case to the court. If negligence would postpone any man, surely Heard would be postponed. It will not be argued that a judgment creditor may protect the debtor in the enjoyment of his property, by hovering over it with an execution, and coming in for a preference when other creditors force a sale. The statute of frauds applies between such creditors; and a man who holds an execution and suffers the debtor to remain in possession of his property, is under the presumption of fraud, and must repel it by proof. 15 John. 430; see cases cited, note (a).

If a man say to the sheriff, I am in no haste, you may let it lie, another fi. fa. coming a fortnight after, shall hold the goods. 5 Mod. 376–7.

Kearney's execution was levied on the lot on the 5th January, '40, as the property of Green and McKay. On 13th Jan. '40, Pittman took out his execution against Goff, and levied on the same lot as Goff's property, and on the same day (13th Jan.) the sheriff indorsed a new levy on Kearney's execution upon the lot, as the property of Goff. Now it is certain that on the 5th Jan. the sheriff did not believe that Goff had any interest in the lot, for Kearney's execution was also against Goff; he then believed the lot belonged to Green and McKay. But when Pittman's execution came to his hands, on the 13th, he was no doubt informed that the lot belonged to Goff. Selling the lot also as Goff's was certainly an afterthought, and it lay upon Pittman to explain it. It is certain the lot would have been sold as the property of Green and

Robinson *et al. v.* Green *et al.*

McKay, if Pittman had not come with his execution against Goff. Now Kearney's execution is against the whole of them, and the purchaser under that execution would hold the lot, whether it belonged to Green, to McKay, or to Goff.   Not so with Pittman's: if he could not show that the lot was Goff's, he had no claim— for if A has judgment, *v.* two, and B has judgment *v.* one of them, and property be sold under both executions, B has no claim to the money unless it was the property of the man against whom he had judgment.   A claims under his judgment *v.* both, whether it was the property of either.   Suppose this was Green's lot, Pittman has no judgment *v.* Green, and cannot have his judgment paid out of Green's property; therefore Pittman in order to come in for the money, must show it was Goff's.   Scott and Avery can have no just claim for their little debt of eighty-one dollars and seventy seven cents upon the case first made, and decided on by the court. But even if we can look to the facts afterwards exhibited, their case is made no better.   They took out execution 15th August, 1837, levied, took forthcoming bond, Page and McKay sureties; bond forfeited 16th Oct. '37, alias 2d Jan. '38, whereupon Green gave a written consent that they might sell without advertising, and Scott and Avery were content with this, permitted defendants to remain quietly in possession and enjoyment of their property and took no step to make their money until 3d Jan. '40, two years and a day—and then only took out their execution when they saw Kearney about to make his money.

Foute, for defendant in error.

The judgment asked of this court is to affect Daniel Thomas sheriff of Hinds county, and control his official action.

Sheriff Thomas is not a party to this record, nor before this court so as to subject him to its judgment, or legally to control his action; 4 Pet. Rep. 473, 475; Hollingsworth *v.* Barbour *et al.;* 1 Howard, 445; 2 Starkie's Ev. 531.

The court will see that the record in case Robinson, Kearney and wife, *v.* Green, McKay and others, closes and is complete and ended at page 10, and on page 11 commences a new record,

between different parties, about different persons, subjects, and interests, wholly distinct.

The judgment required of this court must directly deprive John B. Pittman of the monies adjudged to him by the circuit court, and deprive him and other prior judgment creditors of their rights. The defendants, Green and others, have in fact no interest in the matters really in controversy in this cause; they are mere nominal parties, by the use of whose names in the record, and before this court, the interest and rights of others, not before the court, are sought to be acted upon and adjudicated; 4 Pet. Rep. 466, 472.

The cases cited by appellants, 15 Johns. 430; 8 Johns. 22, 3; and 5 Mod. 376, 7; have no application to the case in the record. Surely it will not be pretended or argued, that Pittman, the oldest judgment creditor, was in any wise "protecting the debtor in the enjoyment of his property," in the face of the record which shows that Pittman kept executions constantly issued and in sheriff's hands, from term to term, except while enjoined in chancery, and forced a sale at the earliest moment he could do so. The rights of Heard and his laches, or whatever he may have done or omitted, have nothing to do with the question now before the court; the only question here, if any is properly before this court, which we deny, is the question between Robinson, Kearney and wife, *v.* Green, McKay, Goff and others, under their judgment of 5 June, 1839, and John B. Pittman, *v.* James Hamilton, *James D. Goff,* Eli Gamer and others, under his judgment of 26 *May,* 1836: and the court below decided (see bill of exceptions, page 12,) that due and legal diligence had been used by plaintiff Pittman, to obtain satisfaction of his judgment; and this opinion of the court the whole facts and record clearly sustain—and all the argument for Robinson, Kearney and wife, about Heard's judgment and execution, and statute of frauds, &c., and protecting of debtor's property by the creditors, is wholly irrelevant to the points and questions on the record. The property was sold under all the executions, and the proceeds of sale properly ordered by the circuit court, to the oldest judgment; 4 Howard's Rep. 178; Smith *et al.* appellant, *v.* Everly, *et al.*

Pittman was guilty of no laches or delay in pursuing his judg-

Robinson *et al. v.* Green *et al.*

ment, and therefore lost nothing of his preference as oldest judgment creditor; 4 Howard 178; Smith *et al. v.* Everly and others.

The injunction obtained *v.* Pittman's judgment, did not destroy his lien or preference over junior judgment creditors. See Martin & Yerger, Overton *v.* Perkins, *et al.*, 367, 371, 373, and cases cited; 4 Howard, 178. But if the injunction did suspend Pittman's rights and destroy his lien and right to prior satisfaction as against subsequent judgment creditors, who acquired liens during the injunction, yet the adoption of that rule cannot a ffect this case, because Pittman's execution was in the sheriff's hand before and at the time of sale of the property, and was levied on Goff's interest in the lot, at same time with appellant's execution; so that Pittman is on equal ground as to time of levy, sale, &c., with appellants, and has beside a judgment three years older.

The title of Pittman to the lot levied on, or its proceeds relates back, when levy actually made, to time of his judgment, so as to cut out intermediate incumbrances of any kind; Thomasson *v.* Smith, 2 Wheat. 396; 4 Cond. Rep. 183.

Pittman was entitled, and also the other older judgment creditors to prior satisfaction out of the lot, (the subject bound by the older judgments) unless his judgment was defective or the liens displaced by some acts of the judgment creditors; Rankin *v.* Scott, 12 Wheat. 177; 6 Cond. Rep. 504.

The single circumstance of not proceeding on the judgments (if such were the facts) until subsequent lien has been obtained and carried into execution, is not such an act. See same case, Rankin *v.* Scott; 12 Wheat. 177; also case of Andrews *v.* Wilkes, in this court.

The certificate of dissolution of injunction, by the clerk of the superior court of chancery in the case of James D. Goff and others, *v.* John B. Pittman, was properly received by the court below, as decided by this court at last term, in case of 4 Howard.

*Per curiam.*

This case comes up from the judgment of the circuit court, rendered on a motion made by the plaintiffs to apply money collected by the sheriff. There were several judgment creditors contending

for the same money. The property had been sold under three executions, and there were two other claimants whose executions had not been levied. Their claims are therefore of course out of the question, and the money must be appropriated to the executions under which the property was sold. The oldest judgment was in favor of Pittman *v.* Green, *et al.*, which was rendered in 1836: the second was in favor of Scott and Avery *v.* Green, *et al.*, rendered in 1837; and the third was in favor of the plaintiffs in error against the same defendants, which was rendered in 1839. The older judgments constituted prior liens, and must be first satisfied, unless the liens have been postponed or lost by the acts of the plaintiffs in the executions.

The plaintiffs in error insist that they are entitled to the money on account of their superior vigilance in finding the property which produced it, although theirs is the youngest judgment; and they also contend that the prior liens have been lost by negligence. It is difficult to settle upon any precise degree of mere passive negligence which would destroy the lien. This subject was ably investigated in the case of Russel *v.* Gibbs, 5 Cowen, 390, from which it seems that an unreasonable delay in prosecuting process will destroy the lien, and also that giving instructions not to levy or giving a stay will destroy it, as against other creditors. There were no instructions given in either of these cases not to levy, nor was there any stay given, and we are not prepared to say that the negligence was such as to destroy the lien. Pittman followed up his judgment by having execution issued to the next term after judgment, and it was levied, and a forthcoming bond taken. On this he had another *fi. fa.* issued, and with the exception of a period of time during which his process was enjoined, he seems to have followed it up with tolerable regularity. There was certainly no gross negligence on his part, and nothing short of that would destroy his lien. There was not such a delay as to amount to evidence of fraud on other creditors. The execution of Scott and Avery seems also to have been followed up, at least it was so considered by the court. A judgment is a lien and it can only be defeated by showing that it has been lost by gross negligence, or by giving time, and the

Robinson, *et al. v.* Green, *et al.*

showing for this purpose must come from the party who wishes to avoid it. We do not consider that the plaintiffs have shown enough to avoid it, and it must therefore stand as a prior lien. But as the court applied part of the money to an execution which was not levied, to wit, that of Heard *v.* the same defendants, this was an error for which the judgment must be reversed, and the money must be applied, first, to the satisfaction of Pittman's execution; second, to that of Scott and Avery; and third, to that of the plaintiffs in error.